Dear Mayor Foster:
You have requested an opinion of this office regarding whether the City of Hammond ("City") may amend a cooperative endeavor agreement previously entered into with Gulf Coast Housing Partnership ("Gulf Coast") concerning the development of workforce housing in the City.
The cooperative endeavor agreement that you are seeking to amend was the subject of La. Atty. Gen. Op. No. 07-0205. The opinion explained the details of the original cooperative endeavor agreement as follows:
 Your request indicates that the City of Hammond owns approximately nine (9) acres of land in a residential area. The property has been recently appraised to be worth $207,000.00. According to your request, the City of Hammond has experienced tremendous growth since August 2005. A recent study revealed that Hammond has a critical need for workforce housing for home ownership. To meet this need, the City of Hammond intends to develop the above-mentioned nine (9) acres through a cooperative endeavor agreement with Gulf Coast Housing Partnership, Inc. ("Gulf Coast"). Gulf Coast, a 501 (c)(3) corporation, is apparently experienced with the development of work force housing projects.
 The proposed cooperative endeavor agreement obligates the City of Hammond to transfer the nine (9) acres to Gulf Coast. In exchange, Gulf Coast will develop the property into a residential subdivision pursuant to plans and specifications which must be approved by the City. Under the agreement, Gulf Coast will be responsible for all costs *Page 2 
of development and construction. Further, the property will be inspected by the City of Hammond as the development progresses and the development must be completed within a prescribed period of time, or ownership will revert to the City.
 Once constructed, the new homes will be sold to qualified low-moderate income persons pursuant to objective criteria. Proceeds of these sales will be used to support the project, including credit counseling, homebuyer training and project management. You have asked us to determine whether the proposed transfer and related cooperative endeavor agreement is allowed by law.
The opinion analyzed the cooperative endeavor agreement in light of Article VII, Sections 14(A) and (C) of the Louisiana Constitution and the Cabela's case[1] and determined that a pubic purpose existed for the project and that both parties to the agreement were incurring obligations such that the transaction, as a whole, did not appear to be merely gratuitous. With regard to the third factor in the Cabela's analysis, whether the public entity had a reasonable expectation of receiving equivalent value for the public funds or property it would expend, the opinion stated that "if the City of Hammond has to the ability to show or demonstrate that it has a reasonable expectation of receiving equivalent value for its proposed transfer, it is this office's opinion that the proposed transfer and related cooperative endeavor agreement does not appear to violate the provisions of the Louisiana Constitution Article VII, Section 14 and is acceptable." Finally, the opinion stated that in order to dispose of the property that was the subject of the cooperative endeavor agreement, the City of Hammond must comply with the provisions of La.R.S. 33:4712 relative to the disposal of property owned by a municipality.
The original cooperative endeavor agreement contained a provision that required Gulf Coast to build and sell homes on the property within a certain time frame. If Gulf Coast did not do so, the property was to revert back to the City. To that end, the agreement provided as follows: *Page 3 
 The City will transfer the Property without warranty to Gulf Coast for the benefit of the Project. The Property will be deed restricted for use only in furtherance of the Project. The Act of Transfer will also contain a provision for the reversion back to the City of the remaining Property not previously released by the City from the obligations of the Agreement if not sold to Qualified Applicants within the time period set forth below. The reversion of any remaining Property back to the City shall be free and clear of mortgages, liens and encumbrances.
Since the original cooperative endeavor agreement was signed, Gulf Coast has made several improvements to the property the City transferred to it. Gulf Coast has developed four single family homes on the property. Although the homes have been listed for sale and have received a lot of interest, the homes remain on the market because although the potential buyers may qualify for subsidy funds, they fall short in attaining necessary permanent mortgage financing to purchase the homes. The original cooperative endeavor agreement has now expired without the homes being sold. Thus, based on the provision of the agreement cited above, the property the City initially transferred to Gulf Coast under the agreement should now revert back to the City free and clear of mortgages, liens and encumbrances.
Gulf Coast has asked the City to amend the agreement to allow for an extension of time for future single family homes to be built on the property to be leased to qualified individuals or families in a lease-to-own transaction. Gulf Coast has proposed paying a fee to the City for amending the agreement. The fee would correspond with an updated appraisal of the land value of the property. The City would like to move forward with the project but asks whether it may amend the cooperative endeavor agreement to allow the City to waive the title reversion provision in exchange for payment of the appraised value of the property without the necessity to comply with La.R.S. 33:4712 for a second time. The City intends to introduce an ordinance to amend the cooperative endeavor agreement and hold a public hearing prior to consideration of final adoption.
La.R.S. 33:4712(A) authorizes a municipality to sell, lease, exchange, or otherwise dispose of any property, which is, in the opinion of the governing authority, not needed for public purposes. La.R.S. 33:4712(B) sets forth the procedures that must be followed before the property is disposed of, and provides as follows:
 B. Except as otherwise provided in this Section, before disposition can be made of property under the provisions of this Subpart, an ordinance must be introduced, giving the reasons for the action on the part of the governing authority, and fixing the minimum price and terms of the sale, lease, exchange, or other contract to be made with reference to the property. In instances of exchanges of municipally owned immovable property valued at one hundred thousand dollars or *Page 4 
more, the municipality, prior to introduction of the aforementioned ordinance, shall for a minimum of three times in thirty days advertise for and receive other proposals for the exchange of property comparable with the exchange of properties proposed by the municipality; however, exchanges involved in the relocation of public streets, roads, highways, servitudes, rights of way, and/or public franchises shall not be subject to this requirement. Thereafter, notice of the proposed ordinance must be published three times in fifteen days, one week apart, in a newspaper published in the municipality or, if there is no such newspaper, in a newspaper having a general circulation in the municipality, and if there is no newspaper of general circulation in the municipality, by posting in three public and conspicuous places in the municipality.
We are unaware of whether the property in question has already reverted back to the City. If the property in question has already reverted back to the City, thereby giving the City legal title to the property, then it is our opinion that the requirements of La.R.S. 33:4712 must be met in order to dispose of the property for a second time as there is no exception applicable for the disposal of public property to a private entity. If, however, the property has not yet reverted back to the city, the parties are free to amend their agreement. The City must ensure that any new obligations undertaken by each party to the amended agreement meet theCabela's test as explained in La. Atty. Gen. Op. No. 07-0205.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY"
 CALDWELL Attorney General
 By:__________________________
 Lindsey B. Hunter
 Assistant Attorney General
[1] The seminal case interpreting La.Const. art. VII, Sec. 14 isBoard of Directors of the Industrial Development Board of the Cityof Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales, et al., 2005-2298 (La. 9/6/06),938 So. 2d 11 (the "Cabela's" case), in which the Louisiana Supreme Court held that La.Const. art. VII, § 14(A) "is violated when public funds or property are gratuitously alienated."Cabela's, 938 So. 2d at 20. In order to determine whether public funds have been "gratuitously alienated," our office has opined that: (i) the expenditure must be for a public purpose that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds.